IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MA LEONOR MORA-MEJIA,<br><br>Petitioner,<br><br>vs.<br><br>FIELD OFFICE DIRECTOR OF ENFORCEMENT AND REMOVAL OPERATIONS, DETROIT FIELD OFFICE, IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Respondents.[1] | CASE NO. 4:26-cv-0745<br><br>DISTRICT JUDGE JEFFREY J. HELMICK<br><br>MAGISTRATE JUDGE JAMES E. GRIMES JR.<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Ma Leonor Mora-Mejia has filed a petition under 28 U.S.C. § 2241 for a writ of habeas corpus. Doc. 1. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court deny Mora-Mejia's petition.

---

[1] The proper respondent in an immigration habeas for a noncitizen detained in this District is the Field Director of the Detroit Field Office for U.S. Immigration and Customs Enforcement. *Mendoza v. Raycraft*, No. 4:25-cv-2183, 2025 WL 3157796, at *8 (N.D. Ohio Nov. 12, 2025). The Court should dismiss the Secretary of the Department of Homeland Security, the Attorney General, and Jerry Greene from this action. *See Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003).

**Background**

*Factual background and Immigration Court proceedings*

Mora-Mejia is a native and citizen of Mexico. Doc. 5-1, at 2.[2] Immigration authorities initially encountered her in June 2025, after she was stopped by police in Amherst, Ohio, for a traffic violation. *Id.* At that time, authorities issued Mora-Mejia a Notice to Appear, placing her in removal proceedings on a charge that she was an alien present without being admitted or paroled. *See* Doc. 1-4; *see also* 8 U.S.C. § 1182(a)(6)(A)(i). A few weeks later, authorities added a charge that Mora-Mejia was removable as alien present without a "suitable travel" or entry document. Doc. 5-3, at 1; *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I).

In July 2025, an immigration judge found Mora-Mejia removable as charged. Doc. 5-4. In August 2025, the immigration judge denied Mora-Mejia's request for release from immigration custody on bond. Doc. 1-2, at 1. The immigration judge later denied Mora-Mejia's motion for bond redetermination. *Id.* at 2. Mora-Mejia appealed this decision to the Board of Immigration Appeals. Doc. 1-3, at 3.

In November 2025, the immigration judge entered an order of removal and denied Mora-Mejia relief in the form of cancellation of removal, but

---

[2]    The Court cites the CM/ECF-generated page numbers at the top of the parties' filings. Document 5-1 is a Form I-213, which courts regard as "reliable," absent evidence that might undermine the information contained in it. *See Pagoada-Galeas v. Lynch*, 659 F. App'x 849, 856 (6th Cir. 2016).

granted her request for voluntary departure. Doc. 5-5, at 1-2; *see* 8 U.S.C. §§ 1229b(b), 1229c(b). Mora-Mejia appealed the immigration judge's merits decision to the Board. Doc. 5-6. That appeal is apparently pending. *See* Doc. 5-7, at 1.

On March 20, 2026, the Board dismissed Mora-Mejia's bond appeal. Doc. 1-3, at 3. The Board held that the immigration judge lacked the authority to consider Mora-Mejia's request for bond. *Id.*

*Mora-Mejia's habeas petition*

In her habeas petition, Mora-Mejia declares that she "brings [her] petition for a writ of habeas corpus to seek enforcement of [her] rights as [a] member[] of the Bond Denial Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM (C.D. Cal.)." Doc. 1, at 2. Mora-Mejia says that "the district court [in *Maldonado Bautista*] granted partial summary judgment on behalf of individual plaintiffs and on November 25, 2025, certified a nationwide class and extended declaratory judgment to the certified class." *Id.* According to Mora-Mejia, the court in *Maldonado Bautista* "held that the Bond Denial Class members are detained under 8 U.S.C. § 1226(a), and thus may not be denied consideration for release on bond under § 1225(b)(2)(A)." *Id.*

Mora-Mejia asserts that "Respondents are bound by the judgment in *Maldonado Bautista*, as it has the full 'force and effect of a final judgment.'" *Id.* at 3. She adds that "[b]ecause Respondents are detaining Petitioner in violation of the declaratory judgment issued in *Maldonado Bautista*, the Court

3

should … order that within one day, Respondent DHS must release Petitioner," or "order Petitioner's release unless Respondents provide a bond hearing under 8 U.S.C. § 1226(a) within seven days." *Id.* at 4.

Mora-Mejia asserts one claim for relief. *See id.* at 6. Specifically, she says that she is entitled to relief under *Maldonado Bautista. Id.* at 6–7. She makes no other arguments.

**Legal Standard**

Under 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to any person who demonstrates that she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). A noncitizen may challenge the lawfulness of immigration detention through a writ of habeas corpus. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001) (observing that "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

The Court lacks jurisdiction in habeas over challenges to the legality of a removal order. *See Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018). It has jurisdiction, however, to consider whether a noncitizen is lawfully detained. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the "'appropriate remedy to'" determine the legality of a person's custody) (quoting 3 Commentaries on the Constitution of the United States § 1333, p. 206 (1833)).

4

**Discussion**

*1. This Court has jurisdiction to review Mora-Mejia's petition.*

Respondents argue that under 8 U.S.C. § 1252(a)(5), (b)(9) and (g), this Court lacks jurisdiction to review Mora-Mejia's petition. *See* Doc. 5, at 10–12. Before discussing these provisions, it is worth noting that Section 1252 is entitled "judicial review of orders of removal." While "section headings cannot limit the plain meaning of a statutory text, 'they supply cues' as to what Congress intended." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018) (citations omitted). So it is questionable at the start whether any of the provisions in Section 1252 would apply to Mora-Mejia, who is not challenging an order of removal.

In any event, Respondents argue that "Section 1252(g) categorically bars jurisdiction over '*any* cause or claim by or on behalf of any alien *arising from* the decision or action by the [Secretary of Homeland Security] to *commence proceedings*, adjudicate cases, or execute removal orders against any alien.'" Doc. 5, at 11 (quoting 8 U.S.C. § 1252(g)). Respondents also argue that under Section 1252(b)(9), "'judicial review of all questions of law … including interpretation and application of statutory provisions … arising from any action taken … to remove an alien from the United States' is only proper before the appropriate court of appeals in the form of a petition for review of a final removal order." *Id.* (citing 8 U.S.C. § 1252(b)(9)).

5

Respondents are mistaken. *See Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (the right of a "person detained by the government" to "challenge the legality of h[er] confinement through a petition for a writ of habeas corpus …. extends to those persons challenging the lawfulness of immigration-related detention") (citing *Zadvydas*, 533 U.S. at 688, and *Demore v. Kim*, 538 U.S. 510, 517 (2003)).

First, Section 1252(g) does not bar, categorically or otherwise, Mora-Mejia's claims. Section 1252(g) provides in relevant part that:

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Based on this statute, Respondents argue that "the decision to commence removal proceedings includes the decision to detain pending such removal proceedings." Doc. 5, at 11. But Respondents only come to this position by ignoring what the Supreme Court has said on this matter. For starters, in *Zadvydas*, the Supreme Court said that Section 1252(g) was among several statutes that had nothing to do with whether a court could review a petition challenging a non-citizen's detention. 533 U.S. at 687–88.

Further, the Supreme Court has cautioned that the jurisdictional limits detailed in Section 1252(g) have a "narrow" reach, and apply only to "review of

cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 19 (2020) (explaining that the Supreme Court has "previously rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes a 'general jurisdictional limitation'") (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)).

Indeed, the Supreme Court has also made clear that Section 1252(g) "applies" "narrow[ly] … only to three discrete actions that the Attorney General may take": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *American-Arab Anti-Discrimination Comm*, 525 U.S. at 482. Outside of these three categories, the Supreme Court has noted that there are "many other decisions or actions that may be part of the deportation process," such as "the decisions to open an investigation, to surveil the suspected violation, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id*. In this way, Section 1252(g) is "not relevant" to the consideration of a court's jurisdiction to consider an immigration habeas petition beyond the three enumerated events. *See St. Cyr*, 533 U.S. at 311 n.34 (relying on *American-Arab Anti-Discrimination Comm*).

A three-justice plurality of the Supreme Court has more recently affirmed the narrow construction of Section 1252(g). *See Jennings v. Rodriquez*, 583 U.S. 281, 294 (2018) (plurality opinion). The plurality reiterated that the Court "did not interpret [the phrase 'arising from'] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court] read the language to refer to just those three specific actions themselves." *Id.* at 294.

Here, contrary to what Respondents imply, Doc. 5, at 11, Mora-Mejia's "detention does not arise from the government's 'commenc[ement] of proceedings,' which begins with the filing of [a Notice to Appear] in an immigration court." *Mahdawi v. Trump*, 136 F.4th 443, 450–51 (2d Cir. 2025) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 396–97 (2d Cir. 2025)). Respondents' jurisdictional argument regarding Section 1252(g) fails. *See Kong v. United States*, 62 F.4th 608, 615 (1st Cir. 2023) ("there is no way to read [Section 1252(g)'s] legislative history as evincing 'a clear statement of congressional intent to repeal habeas jurisdiction' over all detention claims. To the contrary, § 1252(g) was passed with the understanding that collateral challenges to the legality of a petitioner's detention would not constitute 'cause[s] or claim[s]' that 'aris[e] from the decision or action by the Attorney General to ... execute removal orders.'") (citation omitted).

Respondents also argue that subsections (a)(5) and (b)(9) of Section 1252 bar this Court's review of Mora-Mejia's petition. Doc. 5, at 10–11. Section

1252(a)(5) states that the court of appeals is the "sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter" except for subsection (e). Mora-Mejia is not seeking review in this Court of her removal order. So subsection (a)(5) doesn't apply.

Under Section 1252(b)(9), which again, is located under the section heading "judicial review of orders of removal":

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under Section 2241 of Title 38 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

The Supreme Court has "described § 1252(b)(9) as a 'zipper clause' which "consolidate[s] 'judicial review' of immigration proceedings into one action in the court of appeals." *St. Cyr*, 533 U.S. at 313.[3] But the Court has made clear

---

[3] Congress amended the Immigration and Nationality Act in response to *St. Cyr*, to eliminate habeas as a method to review final orders of removal for criminal aliens. *See* REAL ID Act of 2005, Pub. L. 109-13. Div. B, § 106, 119 Stat. 231; *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020). Importantly, although "the Real ID Act eliminate[d] a district court's jurisdiction over habeas petitions challenging final orders of removal," it "did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention." *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006).

that "it applies *only* '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Id.* (emphasis added). As a result, "§ 1252(b)(9) does not clearly apply to actions brought pursuant to the general habeas statute, and thus cannot repeal that statute either in part or in whole." *Id.* at 314; *see id.* at 302 (noting that the writ of habeas corpus historically "encompassed detentions based on errors of law, including the erroneous application or interpretation of statutes"); *see also Ozturk*, 136 F.4th at 399. Here, Mora-Mejia is not challenging an order of removal. Respondents therefore have not shown that section 1252(b)(9)'s jurisdictional-bar applies to Mora-Mejia's petition.

For all the reasons stated, the Court should find that it possesses jurisdiction to consider Mora-Mejia's Petition challenging her detention.[4]

*2. Mora-Mejia's sole argument, that this Court should enforce the judgment in Maldonado Bautista, is meritless.*

Mora-Mejia presents one argument. She says that she is a member of the class that was certified by the United States District Court for the Central District of California in *Maldonado Bautista* and that Respondents are bound by the judgment in that case. Doc. 1, at 3. And because, she says, Respondents are bound by that judgment, *this Court* should enforce it against them. *Id.* at 7. This is simply not how things work.

---

[4] Respondents also raise an exhaustion defense. Doc. 5, at 12–13. Since Mora-Mejia appealed the immigration judge's bond decision to the Board and the Board ruled on that appeal, Doc. 1-3, at 3, Respondents' argument is not well-taken.

In *Maldonado Bautista*, petitioners sought habeas relief, a temporary restraining order, and an injunction barring immigration officials "from detaining Petitioners unless they [were] provided with individualized bond hearings before an [immigration judge]." *Bautista v. Santacruz*, No. 5:25-cv-, 2025 WL 3289861, at *2 (C.D. Cal. Nov. 20, 2025), *reconsideration granted in part*, 813 F. Supp. 3d 1075 (C.D. Cal. 2025), *and amended and superseded on reconsideration*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Ultimately, the Central District of California certified a class of:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025). That court then declared that class members "are not subject to mandatory detention under [8 U.S.C.] § 1225(b)(2) … and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." *Maldonado Bautista*, 2025 WL 3678485, at *1.

To begin with, the only proper respondent in this case is the Field Director of the Detroit Field Office for U.S. Immigration and Customs Enforcement. *Mendoza*, 2025 WL 3157796, at *8. How or whether a district

11

court exercising habeas jurisdiction in California could issue an order concerning a petitioner in Ohio that would bind an official in Michigan is a mystery that Mora-Mejia does not address.

But even putting this issue aside, if Mora-Mejia believes that she is a member of the class in *Maldonado Bautista* and that a government entity or official has violated the court's order in *Maldonado Bautista*, then her remedy lies in the United States District Court for the Central District of California. *See Bedel v. Thompson*, 956 F.2d 1164, 1992 WL 44883, at *4 (6th Cir. 1992). That is the court that issued the order that Mora-Mejia seeks to enforce and it is the court with "the inherent authority to enforce its … decree." *Id*. Indeed, the Central District of California is the only court that could adjudge anyone in contempt of its order. *Id*. And the limitation on the authority to enforce compliance with the court's order or to punish contempt of an order or injunction is jurisdictional. *See Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1318–19 (11th Cir. 2015) ("It is settled that 'the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order,' and this 'power to sanction contempt is jurisdictional.'") (quoting *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012)). As a result, this Court lacks the authority to determine in the first instance whether anyone has violated the order in

12

*Maldonado Bautista*.[5] *See Bruce v. Citigroup Inc.*, 75 F.4th 297, 303 (2d Cir. 2023)

Respondents point to another problem. On March 31, 2026, following oral argument, the Ninth Circuit stayed the *Maldanado Bautista* court's class certification order and declaratory judgment. *Maldonado Bautista v. Exec. Office for Immigration Review*, No. 26-1044, slip op. at 1–2 (9th Cir. Mar. 31, 2026). In its order, the Ninth Circuit concluded that "[t]he government ha[d] made a strong showing that it is likely to succeed on its position that the district court exceeded its jurisdiction in certifying a nationwide class." *Id.* at 2. In doing so, the court explained that because the "Petitioners' claims for relief sound in habeas" they "must be brought in habeas proceedings in the appropriate district of confinement." *Id.* So the order in *Maldonado Bautista* is not currently subject to enforcement in the district that issued it, let alone in this district.[6]

---

[5]   "Congress has provided for the interdistrict registration of federal-court judgments for the recovery of money or property." *Baker by Thomas v. General Motors Corp.*, 522 U.S.C. 222, 235 n.8 (1998) (citing 28 U.S.C. § 1963). This registration scheme is not at issue here.

[6]   The Court notes with some concern that three weeks before Mora-Mejia filed her petition in this Court, the Ninth Circuit administratively stayed the judgment in *Maldonado Bautista* "insofar as the district court's judgment extend[ed] beyond the Central District of California." *Maldonado Bautista v. DHS*, No. 26-1044, slip op. at 1 (9th Cir. Mar. 6, 2026). It was thus the case that even under Mora-Mejia's premise that this Court could otherwise enforce a judgment from another district, the order on which she sought to rely was not then enforceable outside the Central District of California. Yet Mora-Mejia omitted this fact from her petition. *See* Doc. 1.

Mora-Mejia filed a reply to Respondents' opposition but she doesn't say anything in her reply about *Maldanado Bautista* or the Ninth Circuit's stay order. *See* Doc. 6. Instead, after discussing Respondents' jurisdictional arguments, she presents two curious propositions.

First, she says that dismissal is unwarranted because the question of whether 8 U.S.C. §§ 1225 or 1226 applies to a noncitizen in her shoes is unsettled in this district. Doc. 6, at 4–5. But this debate is rendered academic in this case because Mora-Mejia has forfeited any argument about which section might apply. Her petition, which contains a single claim for relief "[p]ursuant to *Maldonado Bautista*," Doc. 1, at 6, contains a single conclusory sentence referencing—without any explanation—the distinction between Section 1225 and 1226. *See* Doc. 1, at 7 ("By denying Petitioner a bond hearing under § 1226(a) and asserting that he is subject to mandatory detention under § 1225(b)(2), Respondents violate Petitioner's statutory rights under the INA and the Court's judgment in *Maldonado Bautista*."). That single sentence does not preserve an argument that Mora-Mejia is not subject, as the immigration judge determined, to Section 1225. *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013). And even if her reply could be considered as raising an argument that Section 1226 should apply, Doc. 6, at 4–5, a reply is not an appropriate place to present new arguments. *See Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 38 (6th Cir. 2019) (citing cases).

Second, Mora-Mejia says that she "has stated a plausible Due Process Claim." Doc. 6, at 5. But the phrase *due process* does not appear in Mora-Mejia's petition, which, again, raised only a single claim that she was entitled to relief "[p]ursuant to *Maldonado Bautista*," Doc. 1, at 6. So Mora-Mejia hasn't raised a due process claim, plausible or otherwise.[7]

Given that Mora-Mejia presents no other arguments, the Court should deny her petition.

**Conclusion**

The Court should deny Mora-Mejia's petition.

Dated: April 24, 2026

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).

---

[7] Further, in claiming in her reply that she's raised a plausible due process claim, Mora-Mejia cites *Zadvydas*. Doc. 6, at 5. In *Zadvydas*, the Supreme Court rejected the argument that under 8 U.S.C. § 1231(a), the Government could detain a non-citizen indefinitely *after* his removal period. 533 U.S. at 689–90. The removal period doesn't start until the entry of a final order of removal, *see* 8 U.S.C. § 1231(a)(1)(A), (B), which occurs once the Board affirms an immigration judge's removal order, 8 U.S.C. § 1101(a)(47)(B). Since the Board has not yet decided Mora-Mejia's merits appeal, her removal period has yet to begin and *Zadvydas* consequently doesn't apply. *See Hamama*, 912 F.3d at 879–80; *see also Demore*, 538 U.S. at 527–28.